UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMPSON, I.G., L.L.C.,

                Plaintiff,                          Case No: 11-12839

vs.                                                HON. AVERN COHN

EDGETECH I.G., INC.,

                Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY GERHARD REICHERT AS PLAINTIFF'S EXPERT (Doc. 30) AND DISMISSING AS MOOT DEFENDANT'S MOTION TO STRIKE REICHERT AS PLAINTIFF'S EXPERT (Doc. 42)

## I.  Introduction

This is a contract case.  Plaintiff, Thompson I.G., L.L.C. (Thompson), a window manufacturer, is suing a former supplier, Edgetech I.G., Inc. (Edgetech).  The dispute centers around a product called the Super Spacer, manufactured by Edgetech, which Thompson contends was defective.  Super Spacer is a thermal seal Thompson used in the production and manufacture of its windows.  Thompson's proposed expert, Gerhard Reichert (Reichert) was a senior-level employee at Edgetech from 1994 until his resignation in 2008.

Now before the Court is Edgetech's motion to disqualify Reichert as Thompson's expert (Doc. 30) and Edgetech's motion to strike Reichert as Thompson's expert (Doc. 42).  For the reasons that follow, the motion to disqualify will be granted and the motion to strike will be dismissed as moot.

## II.  Background

The material facts as gleaned from the parties' papers follow.

1.

Thompson is suing Edgetech for breach of contract, express warranty, and fraud. Thompson is a glass manufacturing company located in Fenton, Michigan.  As part of its business, Thompson manufactures and installs windows in recreational vehicles and residential and commercial properties.  Edgetech is an Ohio company manufacturing a product called Super Spacer.  Super Spacer is a thermal seal that surrounds and insulates windows.  Thompson used Super Spacer in the production and instillation of its windows from approximately 2005 until 2010.  The business relationship between the parties began in 2003 when Edgetech marketed its product to Thompson.  As a condition of sale, Thompson says it retooled its manufacturing line at a cost of $440,000 at Edgetech's request.  Thompson also agreed to use only sealants approved by Edgetch to adhere Super Spacer to the window.  Over the next five years, Thompson says it purchased $555,727 worth of Super Spacers from Edgetech.

Thompson says Super Spacer is defective and it has lost business because of failure of the Super Spacer seal.  Thompson says its customers began to complain of fogging of the windows.  This fogging, according to Thompson, occurred because the Super Spacer allowed water to wick into the window.  Thompson says it complied with all of Edgetech's guidelines in the production and installation of Super Spacer.  Nevertheless, the product failed.

2

In 2007, Thompson began to return samples of Super Spacer asking Edgetech to address the failure of the sealant to adhere to Super Spacer and to address the fogging effect. Thompson says it has warranty losses exceeding $1,000,000 from covering claims from its customers, in addition to lost profits. Thompson seeks money damages for compensation of its losses.

2.

Thompson proposes to use Gerhard Reichert as its expert. Reichert worked for Edgetech as a senior-level employee from Edgetech's incorporation in 1994 until his resignation in 2008, and is a named inventor of Super Spacer. Reichert helped develop, trademark, and patent Super Spacer.

In 1987, Michael Glover incorporated Edgetech I.G. Ltd. in Canada. Glover and Reichert were the initial shareholders. Glover initially invented Super Spacer and hired Reichert as a student. After Edgetech I.G. Ltd patented Super Spacer, Lauren Manufacturing Company, through a holding company, purchased Edgetech I.G. Ltd and the rights to Super Spacer. At the same time, Edgetech I.G. 1989 Ltd. ("Edgetech 1989") was formed as a subsidiary of Lauren Manufacturing to purchase the assets of Edgetech Ltd and continue researching and developing the Super Spacer product line. In 1994, Edgetech 1989 separated from Lauren Manufacturing and Edgetech I.G., Inc. was formed. Reichert continued employment with Edgetech until his resignation on June 3, 2008. When he worked for Edgetech 1989, Reichert signed a confidentiality agreement with Lauren Manufacturing's holding company. Upon his resignation from Edgetech in 2008, Reichert acknowledged in writing that he would not disclose any of Edgetech's trade secrets.

3

During Reichert's tenure at Edgetech, the company developed variations to the original Super Spacer, including Super Spacer premium, Super Spacer TriSeal, Super Spacer T-Spacer, Super Spacer D-Spacer and Super Spacer nXt.  Reichert took part in upper management meetings.  At these meetings, Edgetech management discussed research, development, testing and performance of the Super Spacer product line.  The meetings were confidential and involved only upper management.

### III.  Standard of Review

The decision to disqualify an expert is discretionary.  3D Sys., Inc. v. Envisiontech, Inc., No. 05-74891, 2008 WL 4449595 at *1 (E.D. Mich., Oct. 1, 2008) (citations omitted).  Courts have inherent power to disqualify expert witnesses.  BP Amaco Chem. Co. v. Flint Hills Res., Inc., 500 F. Supp. 2d 957, 959 (N.D. Ill. 2007).  Disqualification is a drastic measure that should be used sparingly.  Koch Refining Co. v. Bourdeau, 85 F.3d 1178 (5th Cir. 1996); see also Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 729 (E.D. Va. 1990).  However, "[e]xpert disqualification may be warranted when a party retains an expert witness who previously worked for an adversary and who acquired confidential information during the course of their employment."  3D Sys., 2008 WL 4449595 at *1 (internal quotations and citations omitted); see also Space Sys./Loral v. Martin Marietta Corp., No. 95-20122, 1995 WL 686369, at *2 (N.D. Cal., Nov. 15, 1995).

In disqualification cases other than clear situations in which an expert switches sides, the Court considers a two-part test: (1) whether the expert had a confidential relationship with the adversary; and (2) whether the adversary disclosed confidential information to the expert that is relevant to the current litigation.  Sensomatic Elec. Corp. v. WG Sec. Prods., Inc., No. 2:04:-Cv-167, 2006 WL 5111116 (E.D. Tx., Feb. 9, 2006).

4

"The burden is on the party who seeks disqualification of an expert to establish that a confidential relationship exists and that the confidentiality has not been waived."  Id.

In addition, many lower courts have considered a third component: "balanc[ing] the competing policy objectives in determining expert disqualification."  Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 580 (D.N.J. 1994).  The policy determinations militating against disqualification are ensuring litigants have access to experts with specialized knowledge, the right of experts to pursue their profession, and ensuring the integrity of the judicial system by preventing litigants from easily disqualifying experts.  Id.  The policy determinations favoring disqualification "include preventing conflicts of interest and maintaining the integrity of the judicial process."  Koch Refining Co. v. Boudreau, 85 F.3d 1178, 1182 (5th Cir. 1996).

## IV.  Discussion

### A.  Parties' Positions

#### 1.  Edgetech

Edgetech asserts Reichert should be disqualified as an expert in any capacity because he worked for Edgetech as a senior-level employee for nineteen years.  During his time with Edgetech, he learned of confidential and proprietary information directly related to the Super Spacer product line.  In fact, Reichert is a co-inventor of Super Spacer and served as Vice President of Business Development and Director of Engineering at Edgetech.  Further, Reichert's testimony would be unfairly prejudicial under Fed. R. Evid. 403.  Reichert's testimony would confuse and mislead the jury.  There is no way for the Court to separate Reichert's general knowledge from the knowledge he obtained while working at Edgetech.

5

Edgetech's position boils down to three points: (1) a confidential relationship existed between Edgetech and Reichert; (2) Reichert was privy to confidential information that relates to the current litigation; and (3) Reichert's testimony is unfairly prejudicial.

### 2. Thompson

Thompson says Reichert never learned of confidential proprietary information relating to the Super Spacer product line.  He did not know the formulation of the spacer component or changes made to the formula.  Any specific information Reichert obtained came from the public domain, i.e. trade show posters or literature available to customers. For example, information regarding desiccant and vapor barriers was openly discussed with potential customers.

Moreover, Thompson asserts that "confidential information" for purposes of expert disqualification is limited to attorney work product or trial strategy.  Simply because information might be subject to a protective order does not mean it is confidential.  In essence, Thompson claims that Reichert never learned of confidential information because the information he learned was not legal in nature.  Mere knowledge of "technical matters," according to Thompson, is not confidential information.

Finally, Thompson asserts that Reichert should be permitted as an expert witness because other experts are unavailable.  Thompson has already consulted with Reichert for seven months and Edgetech's concern that Reichert will divulge confidential information to Thompson is untimely.

### B.  Analysis

The Court considers each factor to determine whether Reichert should be disqualified.

6

1.

The first factor the Court considers in deciding if Reichert should be disqualified is whether a confidential relationship existed between Edgetech and Reichert. Koch Refining, 85 F.3d at 1181; see also Lifewatch Serv. Inc. v. Braemer Inc., No. 09C6001, 2010 U.S. Dist. LEXIS 105088 (N.D. Ill., Sept. 28, 2010). The party seeking disqualification bears the burden in demonstrating "it was reasonable for it to believe that a confidential relationship existed" with the expert. Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004) (citations omitted).

Courts have been quick to find a confidential relationship in situations where the expert witness previously worked for the opposing party. In 3D Systems, this Court disqualified a former employee from testifying in a patent case against his former employer because he was a high-level employee for ten years. 2008 WL 4449595 at *1. The Court found that it was undisputed that the employee had a confidential relationship with his former employer. Id. at *2. Similarly, in Lifewatch Services, the court disqualified defendant's expert, a former employee of plaintiff for nine years, and reasoned that plaintiff "clearly had a reasonable expectation that it had a confidential relationship between itself and [its former employee]." 2010 U.S. Dist. LEXIS 105088, at *4.

Here, there is no question that Edgetech reasonably believed it had a confidential relationship with Reichert. Reichert was a senior-level employee at Edgetech from 1994 to 2008. He worked closely with Glover and co-invented Super Spacer. He helped develop, trademark, and patent Super Spacer. Reichert himself made recommended changes to the specifications of Super Spacer as he continued to research. He signed a confidentiality agreement with Lauren Manufacturing's holding company, and he specifically

7

agreed to keep propriety information confidential, even after the termination of his employment relationship.  Before his resignation from Edgetech, he also signed an acknowledgment that he would not disclose Edgetech's trade secrets.  Thus, it is clear that a confidential relationship existed between Edgetech and Reichert.

2.

The second factor the Court considers to determine if Reichert should be disqualified is whether Reichert obtained confidential or privileged information, which relates to the litigation, from his prior employment with Edgetech.  See Koch Refining, 85 F.3d at 1181. Expert disqualification may be warranted when "a party retains expert witnesses who previously worked for an adversary and who acquired confidential information during the course of their employment." Eastman Kodak Co. v. AGFA-Gevaert N.V., No. 02-CV-6564, 2003 WL 23101783, at *1 (W.D. N.Y., Dec. 4, 2003).  Thompson says confidential information is limited to that which is protected by the attorney-client or work-product privileges, not otherwise discoverable, technical information.

Although the Sixth Circuit and Supreme Court have not addressed this issue, a line of lower court decisions have limited confidential information to information protected by either the attorney-client or work-product privileges.  See, e.g. United States ex rel. Cherry Hill Convalescent, Center, Inc. v. Healthcare Rehab Sys., Inc., 994 F. Supp. 244 (D. N.J. 1997).  The court explained the definition of confidential information in the context of disqualifying experts in Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004):

> Confidential information essentially is information "of either
> particular significance or [that] which can be readily identified
> as either attorney work product or within the scope of the

8

attorney-client privilege."  It could include discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses."  Thus, at least one court has concluded that "[communication based upon technical information as opposed to legal advice is not considered privileged."

(internal citations omitted).  For example, in Cordy v. Sherwin-Williams Co., 156 F.R.D 575,

581 (D.N.J. 1994), an expert was disqualified because he was told opposing counsel's

theory of the case and had access to the mental impressions of counsel.  Similarly, in

Wang Laboratories, Inv. v. Toshiba Corp., 762 F. Supp. 1246, 1249 (E.D. Va. 1991), the

expert learned opposing counsel's views on potential defenses to suit and an assessment

of the disputed patent.

Edgetech acknowledges the line of cases which have required information that is

protected by the attorney-client or work-product privileges before disqualifying an expert.

Edgetech, however, argues those cases considered situations where an expert was

obtained for the purposes of litigation, not a situation like here, where the expert was a

former employee for reasons other than litigation.  The Court agrees with Edgetech's

distinction as do courts that have considered this issue.  In cases where an expert was a

former employee and learned of technical information that relates to the lawsuit, most

courts have disqualified the expert.  See, e.g., Eastman Kodak Co., 2003 WL 23101783.

In Eastman, the court disqualified a former employee as an expert, stating:

H[e] was not a part-time cashier in Kodak's company store.  He was a senior scientist employed by Kodak for eighteen years who was an active member of a closed group of researchers charged with developing, creating and testing "T-Grain" photographic emulsions.  The work of this research group involved the use and sharing of highly confidential information

9

> about high aspect ratio silver halide tabular grains and the utilization of such tabular grains in making photographic emulsions. The record here certainly supports a finding that the work of the "Silver Curtain" research group, of which [he] was a member, concerned "the specific technology at issue in this lawsuit," as the court in Greene demanded.

Id. at *4 (citing Greene, Tweed of Delaware v. Dupont Dow Elastomers, L.L.C., 202 F.R.D. 426 (E.D. Pa. 2001)).

A number of other cases support Edgetech's position that technical knowledge learned by a previous employee is considered confidential information. See, e.g. Sensormatic Elec. Corp. v. WG Sec. Prods., No. 2:04-Cv-167, 2006 WL 5111116, at *3 (E.D. Tex., Feb. 9, 2006) (disqualifying named inventor of patent from serving as a patent consultant against his former employer); Pellerin v. Honeywell Intern. Inc., No. 11CV1278, 2012 WL 112539 (S.D. Cal., Jan. 12, 2012) (disqualifying former employee as expert and reasoning that decision "was not based on [former employee's] access to privileged information but confidential information as well"); Oracle Corp v. DrugLogic, Inc., No. C-11-00910, 2012 WL 2244305, at *7 (N.D. Cal., June 15, 2012) (disqualifying former consultant from acting as expert because "various confidentiality obligations" would be breached); Wang Laboratories, Inc. v. CFR Associates, Inc., 125 F.R.D. 10 (D. Mass. 1989) (disqualifying former employee who possessed information about employer's computer system through his employment); Lake Cherokee Hard Drive Tech., L.L.C. v. Bass Computers, Inc., 2012 WL 708354 (E.D. Tex., Mar. 5, 2012) (disqualifying former high-level employee because he gained technical information from his prior employment); WesternGeco L.L.C. v. Ion Geophysical Corp., No. 09-1827, 2010 Dist. LEXIS 54523, at *3-7 (S.D. Tex., June 2, 2010) (disqualifying former employee because he would use

confidential knowledge gained during his employment when evaluating employer's confidential documents). The Court adopts the rationale contained in the cases above and finds there to be a distinction between "confidential" and "privileged" information.

After carefully reviewing the parties' arguments and papers, the Court finds that Reichert received confidential information relevant to this litigation from his prior employment with Edgetech. Reichert was a senior-level employee at Edgetech from 1994 to 2008. He is a named inventor of Super Spacer and helped develop, trademark, and patent the technology used in Super Spacer. Reichert took part in management meetings that were not open to the public and he was privy to confidential information about Super Spacer and related products. The very product Reichert invented and worked on for a significant part of his career is involved in this lawsuit. Reichert will almost certainly use confidential knowledge he gained from his employment when accessing Edgetech's confidential documents. To an extent, Reichert has already used confidential information he learned from his employment when he complied a preliminary report.[3]

Further, Reichert signed multiple confidentiality agreements relating to Super Spacer. Although Edgetech released marketing literature, information through the web and other public listings, it would be impossible for the Court to know what Reichert learned through the public domain as opposed to his longstanding tenure as a high-level Edgetech

---

[3] By his own admission, Reichert served as Vice President of Business Development worldwide for Edgetech from 2000 until 2008. Nonetheless, Reichert's preliminary report points out alleged Edgetech failures relating to Super Spacer dating back to 2004. The Court finds it hard to believe that, as former Vice President of Business Development worldwide, Reichert does not rely on information he gained only through his employment with Edgetech.

11

executive. Thompson cannot seriously argue that Reichert was never exposed to confidential information during his time with Edgetech.

3.

The third factor the Court considers is "whether disqualification would be fair to the affected party and would promote the integrity of the legal process."[4] Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004) (citation omitted). "Where policy concerns surrounding the integrity and fairness of the adversary process are sufficient, some courts have suggested that those concerns should merit disqualification regardless of the outcome of the two factor test noted previously." LifeWatch Serv., 2010 U.S. Dist. LEXIS 105088, at *4 (collecting cases). Further, the Court can consider "whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert." Hewlett-Packard Co., 330 F. Supp. 2d at 1095 (quoting United States ex rel., Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc., 994 F. Supp. 244, 251 (D.N.J. 1997)).

In LifeWatch, the court stated that it would disqualify the expert even if the plaintiff did not share confidential information with him because his actions came perilously close to "switching sides" mid-litigation. Id. at *7. Similarly, in Alien Tech., the court stated:

> [P]ublic policy weighs in favor of disqualifying [the expert].
> While Intermec does have the right to choose its own experts,
> the Court must be cognizant of the fairness of the judicial
> process. [The expert's] involvement in this case does not pass
> the "smell test" and would color the opinions he gave. The

---

[4] The Court notes Edgetech argues Reichert's testimony should be inadmissible pursuant to Fed. R. Evid. 403. Edgetech's argument will be considered under this third factor. Courts do not consider expert disqualification using Fed. R. Evid. 403. Rather, courts balance competing policy objectives. See, e.g., Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 580 (D.N.J. 1994).

> situation is different than <u>Space Systems</u>, where the experts had "done work for" the other party.  1995 WL 686369, at *2. [The expert in this case] was a high ranking leader at Alien.

2007 WL 4261972 at *2.

Likewise, Reichert's involvement in this case does not pass the smell test. Thompson's proposed use of Reichert as an expert witness is improper.  Thompson wants to use Reichert as an expert witness regarding a defect in the same product line Reichert worked to develop, a product in which Reichert is a named inventor.  Allowing Reichert to serve as an expert is analogous to an expert switching sides mid-litigation.  Although the Court must balance Thompson's interest in securing an expert, it cannot ignore the fact that Thompson put itself in this situation.

Thompson's assertion that Reichert is the only expert who can testify is not persuasive.  Thompson says Edgetech's monopoly on foam spacer products for twenty years leaves it with no other alternative but to hire an expert who, at one time or another, worked at Edgetech.  While this may be true, Thompson chose to hire a named inventor of Super Spacer who was a longstanding, high-ranking employee of Edgetech.  Even though disqualification should be used sparingly, this is a case where an expert must be disqualified.

## V.  CONCLUSION

For the reasons above, Edgetech's motion to disqualify Reichert is GRANTED. Edgetech's motion to strike Reichert as Thompson's expert is DISMISSED as moot.

Disqualification of Reichert as an expert witness does not mean he cannot testify as a fact witness if he has relevant evidence to offer.

      SO ORDERED.


                         s/Avern Cohn_____
                        AVERN COHN
                        UNITED STATES DISTRICT JUDGE


Dated:  September 6, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 6, 2012, by electronic and/or ordinary mail.

                         s/Julie Owens_____
                        Case Manager, (313) 234-5160