UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMPSON, I.G., L.L.C.,

                    Plaintiff,                              Case No: 11-12839

vs.                                                 HON. AVERN COHN

EDGETECH I.G., INC.,

                    Defendant.

_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S PROFFERED OPINION WITNESS STEPHEN H. HOWES (Doc. 79)

## I. INTRODUCTION

This is a contract dispute involving the Plaintiff, Thompson I.G., L.L.C. (Thompson), a glass window fabricator, and the Defendant, Edgetech, I.G., Inc. (Edgetech), a window competent parts supplier.  The dispute centers around a product manufactured by Edgetech that was used in the assembly of Thompson's insulated glass windows called the ethylene propylene diene monomer (EPDM) Super Spacer (Super Spacer).[1] In a particular window, the Super Spacer is one component among many.  In addition to Super Spacers, Thompson's windows contain a primary seal adhesive, a moisture barrier mylar, and a secondary sealant.  As described in the joint statement of facts to Edgetech's motion for summary judgment, "Super Spacers, made of 100 percent foam, are designed to separate two or three pieces of glass to a desired air space, held in place with an adhesive, and

_____

[1] Although Edgetech produces several types of Super Spacers, "[t]his case concerns only Edgetech's standard [EPDM], also known as E-Class, type Super Spacer."  (Doc. 102 at 1) (internal citation to record omitted).

draw down moisture (once sealed) via the desiccated foam construction of the spacer." (Doc. 102 at 1).

Thompson contends that the Super Spacers it purchased from Edgetech were defective because they were not compatible with Fenzi polysulfide, a particular secondary sealant, and that this was the cause of the failure of a substantial number of Thompson's completed insulated glass windows. Edgetech disagrees, arguing that any failure in Thompson's windows was a result of poor workmanship in assembling the windows, not Super Spacer.

Now before the Court is Edgetech's motion to exclude Thompson's proposed opinion witness Stephen E. Howes (Howes). On August 29, 2013, the Court held a hearing under *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons that follow, the motion will be denied.

## II. BACKGROUND

The factual background is explained in the Court's prior orders (Docs. 52, 95) and is not repeated here.

In the motion presently before the Court, Edgetech seeks to exclude Howes as Thompson's opinion witness on the basis that his opinions do not pass muster under Fed. R. Evid. 702 and the standards adopted in *Daubert*.[2]

---

[2] Edgetech also argues that Howes should be excluded because "Thompson systematically destroyed hundreds of allegedly defective insulating glass ("IG") units. . . ." (Doc. 79 at 1). The Court dealt with this issue in denying Edgetech's motion for spoilation sanctions, *see* (Doc. 95), and will not be revisited.

2

**A. Howes's Qualifications**

Howes's curriculum vitae describes him as an "[i]ndustry expert with over forty years of experience at the highest levels of window and glass design, with over 15 window and glass related patents." He attended Chatham Technical School in England from 1965-1970. He has worked in the window and door industry since 1970. He has served as an expert witness in multiple cases involving windows.

**B. Howes's Opinion**

Howes's report (Doc. 86-9) and his testimony at the *Daubert* hearing detail his opinion. Howes opined that Edgetech sold Super Spacers to Thompson that were not compatible with Thompson's Fenzi polysulfide secondary sealant. Because of the incompatibility of Super Spacers with the secondary sealant, Howes says that Super Spacer was not intended for its primary purpose of being used as an all round insulating glass spacer.

Basically, Super Spacer is used to separate two pieces of glass. Super Spacer interacts with a secondary sealant–here Fenzi polysulfide–also in between the two pieces of glass. According to Howes, Super Spacer outgassed, leading to fogging in Thompson's windows. In other words, Howes explained that "there is a fog on the glass that stops the vision so it's not clear anymore." The cause of the Super Spacer failure, according to Howes, was explained at the hearing:

> THE COURT: Well, why did the EPDM in your opinion outgas?
>
> THE WITNESS: Because it wasn't baked out properly in the secondary process that they manufacture to get it all out. That's why it can pass industry standards when it's

done correctly, but in this case it wasn't
because the manufacturing methods were
wrong.  They are not consistent.

At the *Daubert* hearing, Howes explained how he reached his conclusion:

THE WITNESS:     I spent a year in my own test lab way
before this problem because I was trying
to make an EPDM spacer and I kept
[failing] at the certification level.  So we
analyzed why we kept [failing] and we
were   outgassing,   and   I   couldn't
understand why my product is failing and
my competitor's is passing.  So I tested
my competitor's product and that failed as
well, and that's when I found there was a
problem in the test concept because you
can test any of the products that you
make and they all come under what is
called foam spacer.  So if you test the
silicone version, it passes the test, then
you can use the cheaper one, legally use
the cheaper one under the certification
program because none of the people at
the certification program understood at
that   time   that   there   was   different
chemistry.  So I tested Super Spacer and
found it outgas[s]es with EPDM the same
as what mine did.

THE COURT:       And –

THE WITNESS:     And then we had it analyzed what was on
the glass, and it is the same product that
is in the EPDM.

In addition to the testing Howes conducted for one year when trying to create a

competitive product, Howes testified at the hearing that he tested five Super Spacer units

which form the basis of his report.  He visually determined, based on the data from his prior

testing, that the windows were defective because of outgassing of the Super Spacers.  The

chemical fog was not actually tested.

4

### III. LEGAL STANDARD

Under Fed. R. Evid. 702, an expert must be "qualified . . . by knowledge, skill, experience, training, or education," and offer an opinion that is (a) helpful to the trier of fact; (b) based on sufficient facts and data; (c) based on reliable principles and methods; and (d) reliably applies the principles and methods to the facts of the case.  The trial judge is the gatekeeper who must ensure that expert testimony is relevant and reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  The test for determining reliability is flexible and depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Id.* at 150 (citation omitted).  Indeed, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Id.* at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) (emphasis in original)).

### IV. DISCUSSION

The parties do not dispute that Thompson's windows, some of which used Super Spacer, outgassed.  The parties dispute the cause of the outgassing.

**A. Howes's Qualifications**

Edgetech argues that Howes is not qualified to render an expert opinion because he is not a chemist or engineer.  Edgetech explained its position in its supplemental brief after the *Daubert* hearing:

> Perhaps if Howes had a degree in chemistry or engineering, he would appreciate the importance of analyzing data.  Thompson has not tendered the Ph.D. chemist who worked on any testing.  One year of participation by Howes does not make him an expert, particularly when he has not offered any data to support what work was actually done.

5

(Doc. 106 at 5) (internal citation to record omitted).  In addition, Edgetech says that Howes cannot merely serve as a mouthpiece for another expert who actually conducted the critical testing to determine what caused outgassing.

Although Howes is not a chemist or engineer, he has extensive experience in a very specialized field.  Howes's technical training, employment in the window industry for over forty years, and specific attempts to create a product similar to Super Spacer are sufficient to allow him to express an opinion regarding the cause of the failure in Thompson's windows.  Howes's opinion may not withstand scrutiny on cross-examination, but it is not because he is not qualified to render an opinion regarding the windows.

## B. Data From Howes's Testing

Next, Edgetech argues that Howes cannot give an opinion based on testing he conducted for a year but for which he did not offer any data or evidence.  Edgetech contends that Howes is offering his "conclusory say-so," an opinion that must be supported by data to be fair and reliable.  Although the scientific basis of Howes's opinion as to the cause of outgassing is a bit attenuated since he is asking the Court to rely on his opinion, Edgetech will have the opportunity to cross-examine Howes in front of a jury should this case proceed to trial.  By that time, if Howes's opinion is not solidified with regards to the foundational information that he refers to that forms the basis of his opinion, he will be seriously embarrassed on the stand.  Howes's failure to preserve data to support his opinion is a matter that goes to his credibility, not his reliability.  Thus, at this stage in the case, the Court is not going to exclude Howes or provide more time for Thompson to obtain another expert.

For these reasons, if this case proceeds to trial, Howes will be permitted to express his opinion on the cause of the outgassing of Thompson's windows.  It will be up to the jury to determine whether to find Howes's testimony credible.  Edgetech's motion is, therefore, DENIED.

SO ORDERED.


 S/Avern Cohn                                    
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  September 24, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 24, 2013, by electronic and/or ordinary mail.


 S/Sakne Chami                      
Case Manager, (313) 234-5160