UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMPSON, I.G., L.L.C.,

        Plaintiff,                              Case No: 11-12839

vs.                                                        HON. AVERN COHN

EDGETECH I.G., INC.,

        Defendant.
_____/

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY
<u>JUDGMENT (Doc. 91) AND DISMISSING CASE</u>**

**I. INTRODUCTION**

This is a contract dispute between Plaintiff, Thompson I.G., L.L.C. (Thompson), a fabricator of insulated glass windows, sometimes called double pane windows, and Defendant, Edgetech, I.G., Inc. (Edgetech), a product supplier of "Super Spacer®." Super Spacer® is a trade name of a sealant consisting of pliable solid material used in the assembly of insulated glass. First, it keeps separate the two (2) panes of glass which make up an insulated glass unit. Second, it forms a barrier to foreign material entering into the space between the two (2) panes. At issue in this case is the foam Super Spacer® made of ethylene propylene diene monomer (EPDM). All references to "Super Spacer®" are to the EPDM spacer.

It is Thompson's position that the solid in Super Spacer® breaks down when it is exposed to ambient temperatures in excess of 60 degrees Celcius, which is 140 degrees

Fahrenheit. The breakdown results in outgassing[1] which clouds the air space between the two (2) panes. Effectively, the material loses its integrity from the heat, and as a consequence eliminates the air space. Thompson says it is the chemical composition of Super Spacer® that causes the breakdown. This clouding breaches the contract and the express warranty of merchantability which accompanies the sale of the materiel.

Thompson's first amended complaint (Doc. 15) is in four counts:

Count I      Breach of Contract

Count II     Breach of Warranty - Implied[2]

Count III    Breach of Express Warranty - Failure of Essential Purpose

Count IV     Fraud

Now before the Court is Edgetech's motion for summary judgment (Doc. 91). For the reasons that follow, the motion is GRANTED. This case is DISMISSED.

## II. BACKGROUND

The facts are stated in multiple orders and are not repeated here. (**Doc. 22**, Order Dismissing Count II; **Doc. 52**, Memorandum and Order Granting Defendant's Motion to Disqualify Gerhard Reichert; **Doc. 95**, Memorandum and Order Denying Defendant's Motion for Spoilation and Fraud on the Court Sanctions; **Doc. 107**, Memorandum and Order Denying Defendant's Motion to Exclude Plaintiff's Proffered Opinion Witness Stephen H. Howes.

---

[1] Outgassing is "the release of a gas that was dissolved, trapped, frozen or absorbed in some material."  See http://en.wikipedia.org/wiki/Outgassing.

[2] The Court granted in part Edgetech's motion for judgment and dismissed Count II. See (Doc. 22).

Thompson purchased Super Spacer® from Edgetech and used it in the assembly of its windows from 2005 through 2011. These windows were then sold to Thompson's customers. At some point, Thompson's customers began experiencing problems with their windows–they outgassed. Thompson contends that the outgassing is caused by an inherent defect in the chemical composition of Super Spacer®. In addition, Thompson argues that outgassing is exacerbated when assembling a window with both Super Spacer® and a secondary sealant made of Fenzi polysulfide. Thompson says that Edgetech said it was okay to use Fenzi polysulfide with Super Spacer® even though it knew the two were incompatible.

Edgetech disputes that there is an inherent defect in the chemical composition of Super Spacer®. Indeed, Edgetech argues that any defect in Thompson's insulated glass windows is a result of Thompson's poor workmanship.

### III. LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

3

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. DISCUSSION

### A. Thompson Cannot Proceed On The Contract And Warranty Claims (Counts I And III) Based On Pure Speculation

**1.**

In order to defeat Edgetech's motion for summary judgment, Thompson must prove it more likely than not that there is a defect in the manufacture of the Super Spacer® or in its chemical composition that causes a breakdown when the insulated glass is exposed to ambient heat in excess of 60 degrees Celcius. *See, e.g.*, *Shaw v. Toyotomi Am., Inc.*, 101 Ohio App.3d 54, 57–58 (1995) ("Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated.") (citation omitted).[3]

The Sixth Circuit has explained that a defendant is entitled to summary judgment if a plaintiff's evidence of proximate cause calls for a jury to speculate. In *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 564 (6th Cir. 2006), applying Ohio law, the Sixth Circuit stated:

> The issue of proximate cause usually is a question of fact. *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272 (1983). However, if the plaintiff's evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event at issue, then the defendant is entitled to summary judgment. *Renfroe v. Ashley*, 167 Ohio St. 472 (1958).

Indeed, "'[i]n order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on

---

[3] The parties agree that Ohio law applies to the breach of contract and warranty claims, as dictated by the express terms of the contract.

more than mere speculation, conjecture, or fantasy.'" *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008), quoting *Lewis v. Phillip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

**2.**

Despite the multiple opportunities given to Thompson, it has been unable to show that it is more likely than not that there is a defect in the chemical composition or manufacture of Super Spacer® that causes a breakdown when the insulated glass is exposed to ambient heat in excess of 60 degrees Celcius. Instead, Thompson seeks to proceed to trial on its theory that Super Spacer® outgasses on nothing more than mere speculation and conjecture.

*First*, Thompson relies on its expert Stephen Howes's (Howes) opinion that the failure in insulated glass units was caused by an inherent defect in the chemical composition of Super Spacer® which leads to outgassing. However, Howes admitted at a *Daubert* hearing that the basis of his conclusion was testing of insulated glass units that were not included in Thompson's warranty report. Howes did not know what caused the failure of any of the hundreds of units forming Thompson's warranty claims chart. However, Thompson wants a jury to conclude that the units failed due to Super Spacer® outgassing. As indicated in Howes's testimony, he did not inspect or test the units and could not form an opinion as to why those specific units failed:

**BY MR. LEICHTY:**

**Q.**     Mr. Howes, I have presented to you Exhibit 5300. If you will take a moment to flip through that, I'm not going to ask you specific questions about these entries, but I want you to become generally acquainted with this document, sir.

**A.**     Yes, sir.

**THE COURT:** Go ahead.

**BY MR. LEICHTY:**

**Q.** Mr. Howes, we know from other testimony, our affidavits submitted to the Court already, that this is Thompson's warranty claim report, what they are claiming as warranty cost against Edgetech, okay?

**A.** Okay.

**Q.** We also know from other affidavits that the five units that you looked at for purposes of your opinions aren't covered by this report, okay? I'm going to represent that to you.

**A.** Okay. I don't know. I have never seen this report.

**Q.** That was my question. Have you ever seen this report?

**A.** No, sir.

**Q.** And is it fair to say today that for purposes of the windows that are the subject of this warranty cost report you have not – you don't have any knowledge today of why any of these units failed, right?

**A.** Oh, absolutely I don't. This is the first time I have seen it, and it doesn't say here on any of it why they failed.

(Doc. 103 at 61–62, *Daubert* Hearing Tr.).

Thompson's reliance on Howes's opinion, which by his own admission does not apply to the insulated glass units that form the basis of Thompson's warranty claims, is insufficient to create a genuine issue of material fact for trial. Allowing a jury to conclude that the untested insulated glass units forming the basis of Thompson's warranty report failed because of Super Spacer® outgassing–based on Howes's testing of unrelated units–amounts to mere speculation.

Howes succinctly explained his opinion at the *Daubert* hearing:

**THE COURT:** Well, why did the EPDM in your opinion outgas?

> **THE WITNESS:** Because it wasn't baked out properly in the secondary process that they manufacture to get it all out. That's why it can pass industry standards when it's done correctly, but in this case it wasn't because the manufacturing methods were wrong. They are not consistent.

(Doc. 103 at 74, *Daubert* Hearing Tr.).

Howes testified at the hearing that he came to this conclusion by testing Super Spacer® in his own lab for one year when trying to manufacture a competitive product. However, the record does not contain any data that Howes generated from his testing. Nor did Howes perform the same testing on the failed insulated glass units which he admits he never saw. Thus, Thompson in essence wants a jury to arrive at a conclusion of what caused the failure of insulated glass units based on Howes's laboratory testing of unrelated samples. This will be speculation on the part of a jury because it will not be based on any tangible data.

*Second*, Thompson seeks to proffer the following circumstantial evidence to prove that the failure of insulated glass units forming the basis of its warranty report was caused by Super Spacer® outgassing: (1) a majority of warranty claims were made for insulated glass units using Super Spacer® as opposed to the relatively few warranty claims made by customers for insulated glass units using aluminum spacer; and (2) evidence establishing that Thompson's manufacturing process was "more than sufficient."

However, the above circumstantial evidence is insufficient to create a genuine issue of material fact that the cause of the failure of the insulated glass windows was defective Super Spacer®. Although "Edgetech has sold over one billion linear feet of EPDM [Super Spacer®] worldwide," (Doc. 91-13 at 1 ¶ 6, Johnson Declaration), Thompson has not proffered any evidence that a single customer besides itself has complained that Super

Spacer® is defective.[4]

In addition, Thompson purchased Super Spacer® for seven years. On this record, apparently at some point Thompson continued to purchase Super Spacer® it knew to be defective. The record shows that Thompson's customers were returning windows dating back to 2005. Yet Thompson continued to purchase Super Spacer® through 2011. This undermines Thompson's argument.

Moreover, determining the cause of the failure of the insulated glass units that form the basis of Thompson's warranty report would require further speculation by a jury because only a minimum number of the defective units has been saved. The majority of units, according to Thompson, failed in the field and were not returned to Thompson from its customers. Therefore, Thompson wants a jury to conclude that insulated glass units that no one saw or tested–not even Thompson's expert witness Howes–failed because Super Spacer® outgassed. A jury would be unable to reach such a conclusion without pure speculation.

**3.**

In sum, Thompson has failed to show that it is more likely than not that there is an inherent defect in Super Spacer® and that this defect–outgassing at 60 degrees

---

[4] In a footnote in its supplemental brief, Thompson argues that the reason other customers have not complained is because they did not use Fenzi polysulfide secondary sealant together with Super Spacer®. Thompson does not cite to any evidence in the record to support this proposition. Further, even if Thompson established that other customers did not use Fenzi polysulfide secondary sealant together with Super Spacer®, this still does not establish that there is an inherent defect in the chemical composition of Super Spacer®. In other words, that use of Super Spacer® with Fenzi polysulfide may make outgassing worse does not establish that Super Spacer® outgasses in the first place.

9

Celcius–caused a failure in its insulated glass windows that form the basis of its warranty report. Therefore, summary judgment is warranted on the contract and warranty claims.

**B. Thompson's Fraud Claim (Count IV) Fails As A Matter Of Law**

Thompson contends that its fraud claim survives summary judgment regardless of the contract/warranty claims. The basis of Thompson's fraud claim is that Edgetech represented to it that Super Spacer® met industry standards when, in fact, it did not. As Thompson admits, this claim is barred by Michigan's economic loss doctrine. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir. 1994), quoting *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*, 192 Mich. App. 333 (1991) ("'The economic-loss doctrine is a judicially created doctrine that bars all tort remedies where the suit is between an aggrieved buyer and a nonperform[ing] seller, . . . and the only losses alleged are economic.'").

Thompson seeks to get around Michigan's economic loss doctrine by arguing that Ohio law applies to the fraud claim. Thompson's position is not well taken. In diversity disputes, the federal district court is "obligated to apply the choice of law rules of the state in which it sits." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (citation omitted). Under Michigan law, the *lex fori* rule, otherwise known as the "law of the forum" applies to tort claims. *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 290 (1997); *Burney v. PV Holding Corp.*, 218 Mich. App. 167 (1996). Under this analysis, Michigan law applies to tort claims unless "there is a 'rational reason' to displace it.'" *Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-11536, 2012 WL 3065347, at *7 (E.D. Mich. July 27, 2012) (citation omitted). If a foreign state has an interest in having its law apply, the court must determine "if Michigan's interests mandate

that Michigan law be applied, despite the foreign interests." *Id.* (citation omitted). As another court has explained, "[a]lthough this analysis 'most frequently favors the forum (Michgan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter.'" *Id.* (citing *Hall v. Gen. Motors, Corp.*, 229 Mich. App. 580 (1988)).

Here, assuming Ohio has an interest in having its law apply because Edgetech is an Ohio company, Michigan's interests mandate that Michigan law be applied. The only connection to Ohio is that Edgetech is from Ohio. Everything else occurred in Michigan. Thompson is a Michigan company. The Super Spacer® was incorporated in Thompson's insulated glass units in Michigan. The majority of Thompson's customers who purchased allegedly defective insulated glass units were Michigan companies. The alleged outgassing occurred in Michigan. Therefore, under a choice of law analysis, Michigan law applies, and the fraud claim is barred by Michigan's economic loss doctrine.[5]

### V. CONCLUSION

For the reasons stated above, Edgetech's motion for summary judgment was granted. The Court has been more than generous in allowing Thompson's case to proceed

---

[5] Even if Ohio law applied, Thompson's claim is barred. *MedChoice Fin., LLC v. ADS Alliance Data Sys., Inc.*, 857 F. Supp. 2d 665, 671 (S.D. Ohio 2012) ("The economic loss doctrine . . . bars only those tort claims that seek to 'compensate parties for losses suffered as a breach of duties assumed *only by agreement*.'" (citing *Coporex Dev. & Constr. Mgmt., Inc.*, 835 N.E.2d 701 (Ohio 2005)); *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1030 (6th Cir. 2003) (holding that, applying Ohio economic loss rule, if commercial transaction forces resort to contract law to recover economic losses, the claim is precluded by the economic loss doctrine). Here, Thompson admits that the fraud claim is "related to the underlying contract, and breach thereof." (Doc. 97 at 39, Pl's. Resp. Br.). Therefore, applying Ohio's more lenient economic loss doctrine which allows tort claims in limited circumstances, Thompson's claim is barred, as it arises from the alleged breach of a contractual agreement.

this far. In denying Edgetech's motion to exclude Howes the Court noted:

> By [the time of trial], if Howes's opinion is not solidified with regards to the foundational information that he refers to that forms the basis of his opinion, he will be seriously embarrassed on the stand. Howes's failure to preserve data to support his opinion is a matter that goes to his credibility, not his reliability. Thus, at this stage in the case, the Court is not going to exclude Howes. . . .

*Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2013 WL 5357094, at *3 (E.D. Mich. Sept. 24, 2013). At the summary judgment stage, however, Thompson's uncured failures are fatal to its case. As the Sixth Circuit has explained, "summary judgment . . . and all other accepted forms of pretrial disposition are specifically designed to weed out claims that lack merit as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). This is one of those cases that lacks merit.[6]

SO ORDERED.

s/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated: November 14, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 14, 2013, by electronic and/or ordinary mail.

S/Carol Bethel for Sakne Chami
Case Manager, (313) 234-5160

---

[6] Given the Court's conclusion, Edgetech's pending motion to compel (Doc. 70) is DISMISSED AS MOOT.